**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **TULSA FOODS, INC. d/b/a** | ) | |
| **SUPER H FOODS, SKIATOOK,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 05-CV-460-TCK-PJC** |
| | ) | |
| **WAL-MART STORES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>ORDER</u>**

Before the Court is Plaintiff's Motion to Remand Action to State Court (Docket No. 22), filed

December 7, 2005.

**I.    Procedural History**

On June 13, 2005, Plaintiff Super H Foods, a grocery store in Skiatook, Oklahoma, filed suit

in the District Court for Osage County, asserting claims for trespass and conversion of proprietary

information and requesting monetary and injunctive relief.  Plaintiff alleges that Defendant Wal-

Mart Stores, Inc. ("Wal-Mart") sent its employees into Plaintiff's store to surreptitiously record

proprietary pricing information.  For example, on June 1, 2005, a Wal-Mart employee was caught

by the Super H manager using a scanner to record Super H's prices.  The Skiatook Police

Department took possession of the scanner.[1]

On August 10, 2005, Defendant Wal-Mart Stores, Inc. ("Wal-Mart") filed a Notice of

Removal.  On September 9, 2005, Plaintiff filed a motion to remand, alleging that Plaintiff had failed

to establish the requisite amount in controversy and had failed to comply with the local rules of this

---

[1] The Skiatook Police Department was originally a Defendant in the lawsuit but was
dismissed prior to removal.

Court.  On October 31, 2005, counsel for Plaintiff sent counsel for Defendant the letter that it claims is the "other paper" that establishes that the $75,000 amount in controversy is met.  On November 7, 2005, before the Court ruled on the Motion to Remand, Wal-Mart filed an Amended Notice of Removal, citing the October 31, 2005 letter.  The Court denied the first motion to remand as moot, recognizing that, prior to remand, a removing party may cure faulty allegations in a notice of removal by filing an amended notice of removal.  *See Maggio Enter. v. Hartford Cas. Ins. Co.*, 132 F. Supp. 2d 930 (D. Colo. 2001).  The Court ordered Plaintiff to file a motion to remand related to the Amended Notice of Removal if it so desired.  On December 7, 2005, Plaintiff filed the instant Motion to Remand, alleging that the Amended Notice of Removal still fails to establish that the amount in controversy exceeds $75,000.

## II.    Discussion

A civil action is removable only if the plaintiffs could have originally brought the action in federal court.  *See* 28 U.S.C. § 1441(a).  Because federal courts are courts of limited jurisdiction, there is a presumption against federal jurisdiction.  *See Basso v. Utah Power & Light, Co.*, 495 F.2d 906 (10th Cir. 1974).  As such, the Court strictly construes the removal statute and must resolve all doubts against removal.  *See Fajen v. Foundation Reserve Ins. Co., Inc.*, 683 F.2d 331, 333 (10th Cir. 1982).  Removal in this case is based on diversity jurisdiction.  The parties do not dispute the existence of diversity of citizenship but dispute that the amount in controversy exceeds the required amount.

"The burden is on the party requesting removal to set forth, in the notice of removal itself, the 'underlying facts supporting [the] assertion that the amount in controversy exceeds [$75,000.00].'" *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995) (quoting *Gaus v. Miles,*

2

*Inc.*, 980 F.2d 564, 567 (9th Cir. 1992)).  "Thus, where the face of the petition does not affirmatively establish that the amount in controversy exceeds $75,000, the rationale of *Laughlin* contemplates that the removing party will undertake to perform an economic analysis of the alleged damages supported by the underlying facts."  *Archer v. Kelly*, 271 F. Supp. 2d 1320, 1322 (N.D. Okla. 2003) (Eagan, J.).

The local rules of this Court provide:

LCvR 81.3        Removal-Jurisdictional Amount

(a) Where one or more defendants seek to remove an action from state court based upon diversity of citizenship, and where the face of the state court petition does not contain an express damages clause as to at least one claim asserted by at least one plaintiff, in an amount exceeding $75,000 (exclusive of interest and costs), the notice of removal shall include either:

1.  A particularized statement of facts upon which the jurisdictional amount is based set forth in accordance with applicable law; or

2.  With respect to at least one plaintiff in the state court action, either a response by such plaintiff to an interrogatory or interrogatories as to the amount in controversy or an admission by such plaintiff in response to a request for admission.  In either case, that plaintiff's response must state  unequivocally that the damages actually sought by the plaintiff exceed $75,000.

LCvR 81.3.   In this case, Wal-Mart relies on LCvR 81.3(a), which means it must show a particularized statement of facts upon which the amount is based set forth in accordance with applicable law.  To do so, Wal-Mart has submitted a letter from Plaintiff's counsel to Wal-Mart's counsel dated October 31, 2005.  Wal-Mart contends that this letter is analogous to the letter at issue in *Archer v. Kelly*, 271 F. Supp. 2d 1320 (N.D. Okla. 2003), which was found to be sufficient to support a finding that the amount in controversy exceeds $75,000 under a *Laughlin* analysis.  Plaintiff argues that this letter is distinguishable from the letter at issue in *Archer* and that it is insufficient to satisfy the *Laughlin* requirements.

3

In *Archer*, the letter was a pre-suit demand letter sent by the plaintiff's counsel to the insurer of the company that owned the truck allegedly causing the injuries in that case. The letter at issue "summarize[d] the medical treatment [of the victim], and outline[d] the damages as evaluated by her attorneys." *Id.* at 1322. The letter listed categories of damages such as physical and mental pain and suffering, permanent impairment, disfigurement, impairment in earning capacity, and medical expenses. *Id.* It also considered the victim's age, condition before and after the accident, and the nature and extent of her injuries. *Id.* The court concluded that "[t]he letter thus provides a proper economic analysis under *Laughlin* because it contains the underlying facts, with the amounts sought, by category." *Id.* at 1323. Thus, the letter was incorporated into the defendant's removal papers and served as the economic analysis required by *Laughlin*. *Id.*

In this case, the letter was sent after the lawsuit was filed and is from Plaintiff's counsel to Wal-Mart's counsel. Relevant portions of the letter are as follows:[2]

> Pursuant to our many discussions, Super H is prepared to make an *offer of compromise*, accompanied by its rationale for the fact that the offer exceeds the amount currently prayed for in Oklahoma State District Court. First, please be advised that Steve Davis has reviewed the Wal-Mart scanning information provided and is of course bound by the Protective Order. Mr. Davis advises me that the scanning was probably extremely effective in giving Wal-Mart information that provided a competitive advantage. *Mr. Davis concedes that he cannot assist in a damage calculation at this time without further discovery,* which would include finding how the scanned information is integrated with Wal-Mart's pricing policies and Wal-Mart's agreements with various manufacturers. Super H also recognizes that the discovery process would be expensive for Super H as well as Wal-Mart.
> I am confident that Wal-Mart has a policy against price checking and scanning in its stores. If that is the case . . . I think Wal-Mart will have a very difficult time defending the common law trespass action. One question that will be posted to the jury will be, if scanning does assist Wal-Mart in pricing strategy, then why does Wal-Mart aggressively scan its competitors and bar scanning by its

---

[2] Both parties quote selectively from the letter in their briefs. Because the context of the letter is important to the Court's conclusion, the letter is quoted extensively by the Court.

4

competitors?  *Candidly, I acknowledge that my challenge will be to connect a damage figure to the trespass.*

Finally, and perhaps most importantly, Super H will be closed by the end of November, 2005.  I enclose for your review graphs showing sales and profits from the opening of Super H to quarter three in 2005.  As you can see, Super H sales and profits rose consistently until the opening of Wal-Mart's new super center . . . although I recognize that Wal-Mart will argue that the closure is not the result of unlawful conduct.  Based on Super H's demonstrable financial history, Super H was profiting net income before taxes in . . . an approximate annual profit of $500,000.

*Based on the foregoing, and acknowledging that without further discovery Super H may not be able to prove damages in excess of $75,000, or after discovery, may be able to prove damages far in excess of its $500,000 annual profit, Super H makes the following offer of compromise:*

1.  Since Wal-Mart will obviously absorb the business Super H has lost, Super H proposes that Wal-Mart pay one-half of its annual profit in the sum of $250,000. (That sum will be easily earned by Wal-Mart in the next few months.)

2. Wal-Mart will pay Super H's legal fees and case expenses presently in the amount of $19,600.

3. Wal-Mart will agree that it will not in the future scan any stores owned or operated by the principals of Super H or Steve Davis.

4. The terms of the settlement will be confidential.

I appreciate your patience in waiting for this *offer of compromise*. . . .

(*See* Amended Notice of Removal, Ex. 1.)  The Court construes this letter as a post-suit offer of compromise, in which Plaintiff offers to compromise its claims for the total amount of $269,600. The Court views the post-suit "offer of compromise" set forth above as highly distinguishable from the pre-suit "demand letter" at issue in *Archer*.  The offer of compromise clearly states that Plaintiff's expert has not done an actual damages analysis and that Plaintiff's counsel faces risks and challenges in connecting any damages to the trespass claim.  Plaintiff states that it may not be able to prove damages in excess of $75,000 prior to discovery, and then goes on to state that, after discovery, it "may" be able to prove damages in excess of $500,000.  Plaintiff then makes an offer of compromise in between these two amounts ($0 and $500,000).  Although Plaintiff does enclose graphs and some specific financial information regarding Plaintiff's lost profits, Plaintiff

acknowledges throughout the letter that it may have significant difficulty in proving that the alleged trespass or conversion actually caused the lost profits depicted in the financial information provided.

The Court concludes that this type of offer of compromise necessarily takes into account several factors other than the actual value of the claims asserted. For example, it includes consideration for the avoidance of litigation and the avoidance of a public trial. In particular, Plaintiff in this case is careful to avoid any equivocal statements regarding the value of the claims and to make clear that the amount of the offer of compromise takes into account several litigation "risk" factors. The letter simply does not purport to analyze the damages in light of underlying facts but instead concedes that the $269,600 amount proposed is a somewhat arbitrary number between a possible low value of the case (which is below the jurisdictional amount) and a possible high value of the case (which is above the jurisdictional amount). Such a letter, in the Court's view, is insufficient to constitute "an economic analysis of the alleged damages supported by the underlying facts," as is required by *Laughlin*. The letter is therefore distinguishable from the pre-suit demand letter at issue in *Archer*, which contained a statement of the "underlying facts, with the amounts sought for each claim, by category." *Archer*, 271 F. Supp. 2d at 1323.[3]

---

[3] The Tenth Circuit has not set forth a rule regarding whether and under what circumstances post-suit settlement offers or offers of compromise may provide an evidentiary basis to establish an amount in controversy. Circuits that have addressed the issue appear to hold that such a letter may be relevant, but not dispositive, evidence. *See, e.g., Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir.2002) (per curiam); *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 429 (7th Cir.1997); *In re Minnesota Mut. Life Ins. Co. Sales Practices Litig.*, 346 F.3d 830, 835 (8th Cir.2003). Even where such a letter may be considered, such courts have held that the letter must be at least be "a reasonable estimate" of the plaintiff's claims. *See, e.g., Cohn*, 281 F.3d at 840 (stating that a "settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim"); *Vermande v. Hyundai Motor America, Inc.*, 352 F. Supp. 2d 195, 203 (D. Conn. 2004) (stating that court should view settlement letters in context of case as a whole and "should be alert to the fact that settlement offers can often be wildly unrealistic and constitute mere puffery or posturing rather

Plaintiff moves for the assessment of fees and costs against the Defendant for an improper removal pursuant to 28 U.S.C. 1447(c). *Id.* ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."). Awarding such fees is within the discretion of the trial court. *See Suder v. Blue Circle, Inc.*, 116 F.3d 1351, 1352 (10th Cir. 1997). No determination of bad faith need be made to justify such an award. *Daleske v. Fairfield Cmtys. Inc.,* 17 F.3d 321, 324-25 (10th Cir. 1994). Often whether Defendants "had a legitimate basis for believing" that the case fell within federal court jurisdiction will guide the Court's discretion. *Id.* at 324.

Here, the Court does not conclude that Wal-Mart's argument in its Amended Notice of Removal was frivolous. Based on the *Archer* decision and the scant Tenth Circuit case law on this issue, Wal-Mart had at least a colorable basis for the Amended Notice of Removal. *See Hale v. MasterSoft Int'l Pty. Ltd.*, 93 F. Supp. 2d 1108, 1114 (D. Colo. 2000) (noting that though fee awards are within the district court's discretion, a general standard has emerged wherein motions for fees are typically denied where there was a colorable basis for removal). The Court therefore does not find fees appropriate in this matter.

---

than a fair appraisal of a party's damages"). As explained above, the Court concludes that the letter in this case does not constitute any type of "reasonable estimate" of Plaintiff's claims but is instead a  speculative offer of compromise that does not purport to be supported by a real economic analysis or the underlying facts of the case. *See, e.g., Lehman v. Protective Ins. Co.*, No. Civ. S. 04-378, 2004 WL 744877 (E.D. La. April 6, 2004) ("[A] settlement offer that does not list and specifically evaluate the plaintiffs' claims 'is of entirely different import' than a detailed assessment supporting a settlement demand . . . .").

7

IT IS THEREFORE ORDERED that Plaintiffs' Motion to Remand (Dkt. No. 4) is GRANTED.  The Clerk of the Court is ordered to remand this matter to the District Court of Osage County, Oklahoma.

**ORDERED THIS 15th DAY OF FEBRUARY, 2006.**

**TERENCE KERN**
**UNITED STATES DISTRICT JUDGE**